UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-cr-00023-SEB-DML |
| | ) | |
| AARON OVERTON | ) | |
| a/k/a AARON M. OVERTON, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Defendant Aaron Overton is charged with being a felon in possession of a firearm. This charge arises from evidence obtained from a search of his vehicle after he was stopped for a traffic violation. Now before the Court is Defendant's Motion to Suppress Evidence [Docket No. 48]. Having carefully reviewed the parties' briefings, we conclude that no evidentiary hearing is necessary and DENY both the request for a hearing and the Motion to Suppress.

**Factual Background**

On the evening of August 8, 2019, officers Thomas O'Neil and Denver Leverett of the Jeffersonsville Police Department (JPD) conducted surveillance focusing on Defendant Overton in response to a complaint about drug distribution. U.S. Resp. Opp'n Def.'s Mot. Suppress, at 1. The officers were also aware that Mr. Overton was considered a possible suspect in a recent triple-homicide shooting. *Id.* at 2. Shortly after officers

observed Mr. Overton leaving a residence in a gray 2006 Chevrolet Tahoe, Officer O'Neil began following Mr. Overton, who was driving the vehicle. *Id.* at 1-2.

While following the vehicle, Officer O'Neil asserts that he observed Mr. Overton fail to signal a right turn northbound onto Kehoe Lane from Fields Drive in Jeffersonville. O'Neil Decl. ¶ 5. Officer O'Neil activated his emergency lights to initiate a traffic stop, but Mr. Overton continued driving. *Id.* After Officer O'Neil activated his siren, Mr. Overton stopped briefly at a stop sign, but then reportedly continued driving, failing to signal another turn westbound on Kehoe Lane. Dkt. 50-3, Report. Officer O'Neil observed Mr. Overton driving erratically, including traveling "extreme left of center" and forcing oncoming traffic off the roadway. *Id.*

At some point, Officer O'Neil radioed for assistance. According to Officer O'Neil's report, this radio call followed the activation of his siren but before Mr. Overton's car was fully stopped. Dkt. 50-3, Report. Mr. Overton implies that Officer O'Neil radioed for assistance *after* he stopped Mr. Overton in order to have a canine unit come to the scene and search for evidence of crimes unrelated to the traffic violation. Def.'s Mot. Suppress, at 4.

According to Sgt. Leverett's sworn declaration, he was the first officer to arrive on the scene to assist Officer O'Neil, arriving just seconds after Mr. Overton was stopped. Leverett Decl. ¶ 5, 6. Sgt. Leverett was accompanied by Flex, a trained narcotics detection dog. *Id.* ¶¶ 3-4. Sgt. Leverett instructed Mr. Overton to exit the vehicle, and Mr. Overton complied. *Id.* ¶ 7. Mr. Overton was then placed under arrest for Resisting Law Enforcement with a Vehicle. *Id.* Because of Mr. Overton's arrest and because Mr.

Overton's vehicle was obstructing traffic, Sgt. Leverett knew the vehicle would be impounded following an inventory search pursuant to JPD procedures. *Id.* ¶¶ 8. Therefore, Sgt. Leverett prepared Flex for a sniff search prior to the inventory search. *Id.* ¶ 9.

According to Sgt. Leverett's declaration, he prepared Flex for the free air sniff of the car within two to three minutes of Mr. Overton's arrest. *Id.* Although Mr. Overton does not dispute this account or provide an alternate timeframe in which the search occurred, he does claim that Officer O'Neil unlawfully delayed the stop of his automobile in order to have the canine unit called to the scene. Def.'s Mot. Suppress, at 4.

Sgt. Leverett claims Flex's search was carried out in all ways consistent with established protocols, as follows: First, he took Flex downwind of the Tahoe to allow him "to acclimate to the surroundings and clear his olfactory system. Leverett Decl. ¶ 9. He then let Flex off-leash to conduct a free air sniff of the rear passenger side of the vehicle. *Id.* Sgt. Leverett claims that he did not control Flex's movements, but allowed Flex to conduct the sniff at his own pace and in his own manner. *Id* ¶ 10. As Flex approached the seam of the closed front passenger door of the Tahoe, Flex sat on the ground, indicating a passive alert to the odor of narcotic drugs. *Id*. When Flex reached the driver's side door which Mr. Overton had left ajar, Flex jumped inside the vehicle. *Id.* Sgt. Leverett maintains that he did not prompt Flex to jump inside the vehicle. *Id.* Flex then gave positive alerts to both the center console of the vehicle and to a cell phone lying on the driver's seat. *Id.*

Mr. Overton disputes Sgt. Leverett's account that Flex conducted the sniff search at his own pace and in his own manner. Mr. Overton describes the officers as "allow[ing]" Flex to search the interior. Mot. Suppress, at 2. He later implies that they "encourage[d] or facilitate[d]" Flex's search of the interior. *Id.* at 5. However, Mr. Overton does not provide any independent evidence to contradict Sgt. Leverett's characterization of the events, nor does he provide any specific details as to how Flex's search of the vehicle's interior was allegedly encouraged or facilitated.

After Flex's positive alerts on the exterior of the vehicle and the front center console, FBI Task Force Officer Shaune Davis and JPD Det. Dan Lawhorn conducted a probable cause search of the vehicle. Dkt. 50-3, Report. In the center console, TFO Davis discovered and seized a Glock Model 22 semi-automatic handgun.[1] *Id.* On the basis of the discovery of this firearm, Mr. Overton is now charged with being a felon in possession of a firearm.

Mr. Overton contends that the Government has not provided adequate justification for the traffic stop and that the warrantless search of his car violated the Fourth Amendment. We address these issues in turn below.

## Legal Analysis

I. **Standard of Review**

The Fourth Amendment protects citizens against "unreasonable searches and seizures." U.S. Const. amend. IV. "Whenever police stop a vehicle, the stop must meet

---

[1] Det. Lawhorn also seized three cellphones; no drugs were found in the vehicle.

the Fourth Amendment's reasonableness requirement." *U.S. v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). An ensuing warrantless search of the vehicle must come within one of the "specifically established and well-delineated exceptions" to the Fourth Amendment's search warrant requirement. *Arizona v. Gant,* 556 U.S. 332, 338 (2009) (citation omitted). Courts generally exclude evidence resulting from a search or seizure that is determined to have violated the Fourth Amendment. *Id.* (citation omitted). However, the defendant bears the burden of establishing that his Fourth Amendment rights were violated. *U.S. v. Salas*, 979 F.2d 853 (7th Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)).

**II.     Discussion**

    **A.     The Traffic Stop**

Mr. Overton contends that the Government has not adequately established a justification for the traffic stop. The decision to stop a car is generally regarded as reasonable under the Fourth Amendment "where the police have probable cause to believe that a traffic violation has occurred." *Whren v. U.S.*, 517 U.S. 806, 809 (1996) (citations omitted). "Probable cause exists when 'the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.'" *U.S. v. Simon*, 937 F.3d 820, 828-29 (7th Cir. 2019) (quoting *U.S. v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000)).

Here, Officer O'Neil asserts that he witnessed Mr. Overton fail to signal a turn and then again fail to signal a turn when the officer was attempting to pull Mr. Overton over. Mr. Overton has not disputed that he failed to signal a turn, nor has he presented any

evidence or specific facts contradicting Officer O'Neil's account. In the absence of any evidence challenging Officer O'Neil's account, we must conclude that the officer objectively, reasonably believed that Mr. Overton had committed a traffic offense based on the two observations recounted above.

Mr. Overton attacks the traffic stop evidence as violative of the Fourth Amendment because the Government's designated justification—Mr. Overton's alleged failure to signal two turns—was pretextual. Even assuming that is true, the stop would not be a violation of the Fourth Amendment. Pretextual traffic stops are permissible under the Fourth Amendment so long as the officer has probable cause to believe a traffic violation occurred. *See Whren*, 517 U.S. at 811-13; *U.S. v. Minor*, 4:17-cr-00005-SEB-VTW, 2019 WL 5420462, at *2-3 (S.D. Ind. Oct. 23, 2019) ("Where police have probable cause or reasonable suspicion to believe a traffic violation has occurred, the decision to stop a vehicle is reasonable even if the officers were primarily interested in suspected drug crimes.") (citations omitted). Officer O'Neil's objective belief that a traffic violation occurred provides sufficient justification for the traffic stop; his subjective intent is not relevant to a Fourth Amendment analysis. *Whren*, 517 U.S. at 813.

Because Mr. Overton has presented no contrary evidence to that proffered by the Government and has presented nothing beyond his own speculation and conjecture in support of his theory of the facts, we hold that no evidentiary hearing is necessary in order for us to determine that the traffic stop at issue here was reasonable. *See U.S. v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011) ("In order to be granted an evidentiary hearing, the defendant's allegations and moving papers must be 'sufficiently definite, specific,

non-conjectural and detailed.'") (citation omitted). Having concluded the traffic stop was reasonable, we now turn to an analysis of the subsequent search of the vehicle.

### B. Sgt. Leverett's Deployment of Flex and the Subsequent Search of the Vehicle

Mr. Overton contends that the use of a canine unit and the ensuing search of the vehicle constituted an unreasonable search under the Fourth Amendment. Mr. Overton argues that the fruits of the search should thus be excluded because (1) the officers improperly prolonged the traffic stop to have the canine unit come to the scene; (2) Flex's sniff search was improperly carried out because the officers allowed the dog to enter the car; and (3) the facts do not justify a search incident to arrest. For the following reasons, we conclude the sniff search was properly conducted, and the officers had probable cause to search the vehicle.

First, "[a] dog sniff of a car's exterior is permitted during a lawful traffic stop, even absent reasonable suspicion of contraband, so long as the dog sniff does not unreasonably prolong the traffic-related mission." *Minor*, 2019 WL 5420462, at *3 (citing *Simon*, 937 F.3d at 831-32). According to Sgt. Leverett's uncontradicted declaration, he was the first officer on the scene—arriving within seconds after the radio call—and Flex was deployed within two to three minutes of Mr. Overton's arrest. Mr. Overton proffers no evidence of an alternate timeframe to counter or undermine Sgt. Leverett's account.

Mr. Overton does contradict a portion of the Government's account by claiming that Officer O'Neil stopped Mr. Overton, "*and then*, delayed the stop so he could have a

canine unit come to the scene and search for evidence of other, unrelated crimes." Def.'s Mot. Suppress, at 4 (emphasis added). However, Mr. Overton does not cite any evidentiary support for this assertion, including any attack on the credibility of Sgt. Leverett or Officer O'Neil. The police report plainly states that Officer O'Neil called for backup police assistance *before* Mr. Overton was stopped. Furthermore, as noted above, Sgt. Leverett asserted in his declaration provided under penalty of perjury that he was the first officer on the scene, having arrived within seconds after Officer O'Neil's radio transmission was sent. Leverett Decl. ¶¶ 5-6. In any event, Mr. Overton does not dispute that the sniff search was conducted within two to three minutes of his arrest.

In the absence of any evidence to the contrary, we conclude that the officers did not improperly prolong the stop when the dog was deployed within three minutes. *See Simon*, 937 F.3d at 832-33 (concluding "the officers did not improperly prolong the traffic stop to allow the sniff to occur" when the time from the beginning of the stop to the canine alert was a total of about seven minutes).

Second, Mr. Overton maintains that the sniff search was improperly carried out because Flex was allowed to enter inside the vehicle. While Mr. Overton concedes that a canine may sniff outside of a vehicle during a permissible traffic stop, he contends that significant privacy interests are at play when a dog enters a vehicle, requiring that such a search be justified by a search warrant or some exception to the warrant requirement.

We have recently had occasion to consider a similar case involving both Sgt. Leverett and Flex. *See Minor*, 2019 WL 5420462, at *3-4. In *Minor*, Officer O'Neil stopped a car after officers had conducted surveillance focusing on the driver. *Id.* at *1.

Sgt. Leverett in that case also arrived at the scene of the stop with Flex and deployed him in the same manner as described in his declaration in this case. *Id.* Sgt. Leverett allowed Flex to "follow his nose" as he was trained to do, and Flex jumped through a window that had been left open by that defendant. *Id.* at 2. Flex again gave a passive alert to the center console, which led the officers to obtain evidence. *Id.*

On these nearly identical facts, we determined in *Minor* that Flex's search of the interior of the vehicle did not render the warrantless search unreasonable. *Id.* at 4. In reaching that conclusion, we noted that although the Seventh Circuit has not specifically ruled on this issue, "those circuits that have confronted such facts have unanimously held the searches to be reasonable so long as the officers did not request that the window be opened or prompt the dog to jump into the vehicle." *Id.* (citing *U.S.* v. *Sharp*, 689 F.3d 616, 619 (6th Cir. 2012); *U.S. v. Pierce*, 622 F.3d 209, 213 (3d Cir. 2010); *U.S. v. Vazquez*, 555 F.3d 923, 930 (10th Cir. 2009); *U.S. v. Lyons*, 486 F.3d 367, 373 (8th Cir. 2007)).

Mr. Overton maintains, however, that the officers involved in his stop prompted Flex to jump into the vehicle. Mot. Suppress, at 2, 5. Again, Mr. Overton does not support this claim with any evidence nor directly dispute the officers' declarations otherwise, engaging instead in nothing more than speculation. Sgt Leverett, in contrast, specifically asserts in his sworn declaration that Mr. Overton had left the door open to his vehicle, and when Flex alerted, he simply followed his nose as he has been trained to do. Leverett Decl. ¶ 10. We therefore conclude that Flex's search of the interior of the vehicle did not render the search unreasonable, the same conclusion we reached in *Minor*.

Mr. Overton's final argument is that the facts did not justify a search incident to arrest; therefore, the warrantless search of the car which produced the firearm that is the basis of one of the charges here was unreasonable, requiring suppression of the evidence discovered during the search. The Government contends that regardless of whether the facts justified a search incident to arrest, the search was justified because the officers had probable cause to conduct it. We agree.

As noted in *Minor*, "[a] dog's alert on a vehicle can provide a rebuttable presumption of probable cause to search the entire vehicle." 2019 WL 5420462, at *3 (quoting *Simon*, 937 F.3d at 833). The test is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Simon*, 937 F.3d at 834. Under the nearly identical circumstances in *Minor*, we concluded that Flex's "sniff was up to snuff" which provided probable cause to search the entire vehicle. 2019 WL 5420462, at *4.

Here, Flex gave a passive alert on the outside of the vehicle, he followed his nose inside the vehicle, and then gave a positive alert to the center console. Given Flex's training and performance certification and documented capabilities,[2] a reasonably prudent person would think that a search of the vehicle including its center console would

---

[2] Mr. Overton does not dispute Flex's qualifications. Moreover, as we recently noted in *Minor*, Flex's reliability rate is well within the Seventh Circuit's standards for margin of error. 2019 WL 5420462, at *4. Flex's current cumulative reliability rate is 92.14%, dating back to May 3, 2016. Leverett Decl. ¶ 3. Although no drugs were found in the vehicle, this does not negate the validity of Flex's positive alerts, as a trained narcotics canine will alert to the odor of drugs even if the drugs are no longer physically present. Leverett Decl. ¶ 12.

reveal contraband or evidence of a crime— tracking the same legal analysis we applied in *Minor*. Accordingly, we hold that the officers here had probable cause to search the vehicle when the search was conducted and that the search was reasonable. Thus, Mr. Overton's motion to suppress must be denied.

### III.   Conclusion

The traffic stop of Mr. Overton's vehicle was justified by Officer O'Neil's reasonable belief that Mr. Overton, in operating his car, had failed to properly signal a turn, warranting the traffic stop. Following the stop, Mr. Overton's detention at the scene was not improperly prolonged to permit the sniff search, and when the sniff search was conducted, it was performed in a proper fashion. Flex's positive alerts provided probable cause to justify the officers' search of the vehicle and the discovery/seizure of the subject firearm was therefore constitutionally justified. Accordingly, we **DENY** Mr. Overton's Motion to Suppress [Docket No. 48]. No evidentiary hearing is necessary because Mr. Overton has not raised a non-conjectural dispute as to any material facts.

IT IS SO ORDERED.

Date:
   7/10/2020

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Joseph R. Eggert
ATTORNEY AT LAW
tlyons@600mainlaw.com

Michael L. Goodwin
michaellgoodwin@me.com

William Lance McCoskey
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
william.mccoskey@usdoj.gov